Hart, J.
 

 The first issue presented by the record is whether the medical certificates furnished by the plaintiff to the defendant company constituted “due proof” •of total and permanent disability as required by the insuran'ce contract. It is claimed by the defendant that ‘ ‘ due proof ’ ’ is made a condition precedent to the insured’s, right to receive benefits and that the submission of proof .of any disability, less than total and permanent disability which renders the insured unable •at any time to perform any work or engage in any business for compensation or profit, does not satisfy this -condition.
 

 In the opinion of this court “due proof” of total ■and permanent disability requires only
 
 prima facie
 
 evidence of such disability. It does not require such certainty of proof of total and permanent disability as is required in the proof of such a claim in an action at ■law in case the claim is rejected by the insurer. No such exhaustive and complete investigation and proof is required. The defendant is scarcely in a position to •claim that “due proof” requires absolute proof of all the elements of the claim which would entitle the plaintiff to recover disability payments when it is not •obliged to accept such proof or to be bound by it in the allowance of a claim. The real purpose of the proof of claim is to advise the insurer of the nature and character of the claim made by the insured with reference to his disability. This is to enable the insurer to make proper investigation for the purpose of •determining whether the claim should be allowed or rejected. Otherwise, no claim where due proof, as interpreted by the defendant, is properly made, should be rejected.
 

 
 *395
 
 The proof of claim submitted in this case alleged that the plaintiff was suffering from a mental disease, designated as dementia precox; that his condition was complicated with diabetes; and he was not able to engage in any gainful employment and that the question of total and permanent disability was “indefinite yet”; and that while some estimates were made as to when-he might be able to return to work, there was nothing to indicate that he would probably recover from what is generally regarded as a progressive and incurable-disease. In the opinion of the court, the plaintiff’s proof of claim was sufficient under the terms of the contract to serve the purpose for which it was required.
 

 The defendant claims further that the proof submitted in the trial of this case did not establish the fact, as required by the insurance contract, that the-plaintiff was totally and permanently disabled, or unable at any time to perform any work or engage in-any business for compensation or profit.
 

 The undisputed evidence shows that the plaintiff was stricken with mental trouble on July 30, 1940; that he was hospitalized on that date and the next day in two Cincinnati hospitals, at which time he became so-violent that he was anesthetized by his physician; that he was taken by his brothers to Michigan for a rest and while there he became uncontrollable and was placed in a Detroit hospital and remained there for almost-a month prior to September 2, 1940; that he was then placed in a Cincinnati sanitarium and afterwards spent some time in Florida, where he was examined by physicians ; that on his return he attempted to resume his work selling hats and caps to the retail trade, but failed; and that during the year 1941, the plaintiff was under the treatment of a neurologist, of Cincinnati,, who diagnosed his illness as “manic-depressive insanity. ’ ’
 

 The neurologist testified at- the trial to the effect that
 
 *396
 
 he saw the plaintiff last in November 1941; that he was unable to do any accurate or successful work in his regular occupation; that he did not show any recovery, but “fluctuated from one stage of the disease to the other”; that he, the doctor, “could not scientifically say when and if he would recover ’ ’; that any statement made by him “would be in the nature of an approximation”; that “some of these cases remain chronic all their lives and have recurring attacks of the disease”; and that the plaintiff was not able to engage successfully in any occupation for compensation for which he was intellectually qualified when normal; that in his opinion, plaintiff’s affliction was a chronic recurring disease which lasts more or less throughout the life of the individual; and that “he -may go into a chronic maniacal stage or a chronic depressed stage.” There was no medical or other testimony to rebut this testimony.
 

 Testimony was adduced by the defendant that the plaintiff, after November 1941, had been given employment by one of his brothers in his business at a salary of $50 per week, which employment continued up to the time of trial. But this brother testified that this arrangement had been made by himself and two other brothers at the suggestion of the physician as a health measure for the plaintiff, and that the money paid him was paid out of their own pockets wholly as a matter of gratuity, and not as compensation for any work that he did.
 

 What construction is to be given to the insurance contract in question, providing for payment in case of
 
 total
 
 and
 
 permanent
 
 disability, in the light of the evidence submitted to the jury in this case?
 

 The greatest difficulty arises in determining what is meant by the term “permanent” as used in the context of this insurance agreement. New authorities go to the extent that it must be interpreted to mean,
 
 *397
 
 necessarily, disability for the remainder of the life of the insured. It is tbe defendant’s claim, as expressed in its brief filed in this ease, that the plaintiff “may recover only upon proof that his disability is both total and permanent and will, with reasonable certainty, prevent him from engaging in any work or occupation throughout life.”
 

 That the defendant company did not consider a so-called permanent disability as necessarily being one for a lifetime, or
 
 res judicata
 
 as to a further or later judicial determination of a similar claim for a later period of time, is shown by the terms of its contract which provides that notwithstanding proof of disability had been accepted as satisfactory, the insured must, on the insurer’s demand, but not of tener than once a year, furnish due proof of
 
 the continuance of such disability.
 
 In fact, if the term “permanent” is to be given a literal interpretation, there is an apparent conflict or ambiguity introduced into the contract by reason of the later provision for redetermination above noted. See
 
 Federal Life Ins. Co.
 
 v.
 
 Lewis,
 
 76 Okla., 142, 183 P., 975, 5 A. L. R., 1637.
 

 The general rule of interpretation under such circumstances is that where the meaning of the language in an insurance policy is ambiguous or susceptible to two different constructions, it will be strictly construed against the insurer, and that construction adopted which is most favorable to the insured. 29 American Jurisprudence, 181, Section 166.
 

 The term “permanent disability,” as used in the policy, must mean that claimant’s disability will probably continue for some indefinite period of time. It is comparable to the idea conveyed by the term “permanent residence.” The meaning of permanent residence is not that it shall necessarily continue for one’s lifetime, but for an indefinite future period, with the possibility, however, that a change may occur.
 

 
 *398
 
 The testimony adduced at the trial was to the effect that plaintiff’s disability existed at the time of trial and that it would probably continue, at least, indefinitely. This is sufficient proof to go to the jury on the question of permanency.
 
 Gibbons
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 135 Ohio St., 481, 21 N. E. (2d), 588. See, also,
 
 Equitable Life Ins. Co. of Iowa
 
 v.
 
 Gerwick,
 
 50 Ohio App., 277, 197 N. E.,
 
 923; Mutual Life Ins. Co. of N. Y.
 
 v.
 
 Wheatley,
 
 243 Ky., 69, 47 S. W. (2d), 961.
 

 The court is of opinion that under the terms of the policy in question, the test of plaintiff’s ability to perform any labor for compensation is not limited strictly to the occupation or vocation in which the insured may be engaged at the time his disability accrued, but extends to any comparable employment for which the insured is fitted by education, experience and physical condition. Here, the testimony indicated that the plaintiff was not mentally fitted for any responsible employment, and the jury was therefore permitted to find, under the testimony, that the money paid him ■ was, in fact, a gratuity on the part of his brothers. The admission of evidence to the effect that the plaintiff was not able to follow his former employment, and the charge of the court to the effect that his ability to work .and to earn compensation, should be limited to his former employment, no interrogatories having been ■submitted, were not prejudicial. Likewise, and for the ■same reason, the complaint of the defendant concerning the charge of the court as to the character of the payment which the plaintiff received, as bearing upon the liability of the defendant, was not prejudicial. There was evidence to support the verdict of the jury, •and the charge of the court was not prejudicial.
 

 The judgment of the Court of Appeals is therefore ■affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Bell, Williams and Turner, JJ., concur.